UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MIKE BULOAN, et al.,

                    Plaintiffs,                       Case No. 19-13220
                                                    Honorable Thomas L. Ludington

v.

GENERAL MOTORS, LLC, et al.

                    Defendants.

_____/

**OPINION AND ORDER DIRECTING SUPPLEMENTAL BRIEFING REGARDING
PLAINTIFFS' MOTION FOR REMAND**

On July 9, 2019 Plaintiff Buloan and co-plaintiffs filed a complaint in Los Angeles Superior Court alleging that General Motors (GM) "committed fraud by installing and calibrating emission control devices" in diesel powered vehicles. ECF No. 1-1 at PageID.178. Plaintiffs are either residents of California or residents of other states who purchased their GM vehicle in California. There are 85 plaintiffs in the instant case. Plaintiffs allege breach of express warranty and breach of implied warranty under California Civil Code § 1790, violations of the California Unfair Competition Law and the California False Advertising Law, and common law claims of fraudulent concealment, negligent misrepresentation, civil conspiracy, and joint venture as a result of alleged defeat devices in GM Silverado and Sierra vehicles against Defendants. ECF No. 1.

Specifically, Plaintiffs allege a breach of express warranty (Count I) because "GM, the Dealer Defendants and/or GM's authorized repair facilities failed to repair the defects and/or nonconformities to match the written warranty after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements." ECF No. 1-1 at PageID.197. Second, Plaintiffs allege a breach of implied warranty (Count II) because "GM

and the Dealer Defendants impliedly warranted to Plaintiffs that the Fraudulent Vehicles were 'merchantable' within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Fraudulent Vehicles do not have the quality that a buyer or lessee would reasonably expect." *Id.* at PageID.193. Third, Plaintiffs allege GM violated the California Unfair Competition Law (Count III). Specifically, Plaintiffs allege "GM intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with an intent to mislead Plaintiffs." *Id.* at PageID.201. Fourth, Plaintiffs allege GM violated the California False Advertising Law "because the misrepresentations and omissions regarding the functionality, reliability, environmental-friendliness, and emissions of the Fraudulent Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer." *Id.* at PageID.204. Fifth, Plaintiffs allege GM "committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers." *Id.* at PageID.205. Sixth, Plaintiffs allege all "Defendants made material misrepresentations of fact to Plaintiffs concerning the quality and condition of the Fraudulent Vehicles including, but not limited to, their emissions, their power and their fuel efficiency." *Id.* at PageID.211. Seventh, Plaintiffs allege GM, Bosch GmbH, and Bosch LLC "engaged in civil conspiracy with each other and with person(s) unknown to the Plaintiffs to conceal the defects in the Fraudulent Vehicles" which lead to "the unlawful objective of profiting from the sale of the Fraudulent Vehicles." *Id.* at PageID.212. Finally, Plaintiffs allege GM, Bosch GmbH, and Bosch LLC "acted in concert and for a common purpose for monetary gain as joint venture partners with an agreement to share the profits, if any, of their unlawful acts." *Id.* at PageID.213.

There are three categories of Defendants. First, "Dealer Defendants" of Courtesy Chevrolet Center and Paradise Chevrolet, both California corporations. It is unclear from the complaint

where the Dealer Defendants are located. Second, the "Manufacturer Defendants," General Motors, Robert Bosch GmbH, Robert Bosch LLC. Third, "Doe Defendants" who "are presently unknown to Plaintiffs who will seek to amend this Complaint to include these Doe Defendants when they are identified." ECF No. 1-1 at PageID.128.

On November 1, 2019, the case was removed from the Superior Court of the State of California, County of Los Angeles to the Central District of California by GM. ECF No. 1; ECF No. 43 in 19-07343 (C.D. Cal.). GM represented that "All defendants who have been properly served have consented to the removal of this action pursuant to 28 U.S.C. § 1446(b)(2)(A)." ECF No. 1 at PageID.27. No additional information was provided documenting the other defendants' approval.

Plaintiffs filed a motion to remand the case to state court and GM filed a motion to transfer the case to the Eastern District of Michigan. ECF Nos. 30, 31 in 19-07343 (C.D. Cal.). First, United States District Judge Michael Fitzgerald from the Central District of California explained that "the Court will exercise its discretion to decide the Transfer Motion without ruling on the first [remand motion], considering the complexity of the Remand Motion, the number of cases with similar, if not exact, issues pending in the Eastern District of Michigan, and the cases in the Ninth Circuit clearly stating that the Court can exercise its discretion to rule on the Transfer Motion first." ECF No. 43 in 19-07343 (C.D. Cal.). Second, Judge Fitzgerald concluded that "many issues raised by the Remand Motion are already being considered, or will be considered, by the Eastern District of Michigan, including preemption and the validity of some of Plaintiffs' claims" in *Counts v. General Motors, LLC* and *In re Duramax Diesel Litigation*, the complexity of the remand motion which "deals with diversity jurisdiction issues (including fraudulent joinder), federal question jurisdiction issues (under the doctrine of preemption), and CAFA jurisdiction issues, which

collectively raise complex issues." ECF No. 43 at PageID.1029-1031. He also concluded that the fact that 6th Circuit caselaw "could benefit GM's opposition to the Remand Motion, as *Freeman*[1] becomes binding precedent as opposed to persuasive authority," is insufficient to deny transfer. *Id.* As such, the case was transferred from the Central District of California to the Eastern District of Michigan.

The case was docketed in the Eastern District of Michigan on November 1, 2019. ECF No. 1. On November 6, 2019, Plaintiffs filed a motion to remand to California state court. ECF No. 4. The time period for the Defendants to answer the complaint has been extended to 30 days after the Court addresses the instant motion. ECF No. 13.

## I.

Some background information on the companion case, *In re Duramax Diesel Litigation*, is instructive. On May 25, 2017, Andrei Fenner and Joshua Herman filed a complaint against Defendants, General Motors, Bosch LLC, and Bosch GmbH. ECF No. 1 in 17-11661. On June 21, 2017, Plaintiffs Carrie Mizell, Matt Henderson, George Stanley, Michael Reichert, Gregory Williams, Phillip Burns, Kurt Roberts, and Keith Ash filed a complaint against the same Defendants. ECF No. 1 in 17-11984. The cases were consolidated on July 25, 2017 and given the case caption: *In re Duramax Diesel Litigation*. ECF No. 16 in 17-11661. The parties in both cases stipulated to the consolidation "because the cases involve common questions of law and fact, and because consolidation would advance the interests of judicial economy." ECF No. 16 in 17-11661. On August 4, 2017, an amended complaint was filed in the consolidated case by the plaintiffs identified above, with the addition of Anthony Gadecki, Cody McAvoy, and James Crunkleton. ECF No. 18. The amended complaint in *In re Duramax Diesel Litigation* "assert[ed] claims under

---

[1] *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008).

RICO and various state laws regarding the emissions performance of Model Years 2011-2016 Chevrolet Silverado and GMC Sierra diesel vehicles equipped with the Duramax engine." ECF No. 16 at PageID.876 in 17-11661.

The amended complaint survived a motion to dismiss. ECF Nos. 44, 45, 61. This Court found that the alleged overpayment by Plaintiffs when paying for vehicles they believed to be 'clean diesel' was sufficient to establish standing against GM and the Bosch Defendants. ECF No. 61. It also found that the complaint was pled with sufficient specificity (PageID.3492); that the state law claims are not preempted because Plaintiffs are not alleging Defendants defrauded the Environmental Protection Agency ("EPA") and Congress did not intend the EPA to fully "regulate the scope of vehicle manufacturer's disclosure obligations to consumers" (PageID.3498-3505); that Plaintiffs have alleged sufficient damages (overpayment of the vehicle) and proximate cause for the RICO claim for a motion to dismiss (PageID.3517-3520); and that Plaintiffs have standing to bring a Racketeer Influenced and Corrupt Organizations ("RICO") claim because Plaintiffs alleged GM and Bosch worked together to create the alleged "defeat device." (PageID.3528).

Between May 6, 2019 and May 10, 2019, Mr. Charles Wade Miller, Plaintiffs' counsel in the instant case, filed 26 complaints on behalf of a total of more than 2700 plaintiffs. Unlike *In re Duramax*, these Plaintiffs sought to advance individual claims and not seek class action certification. All 26 complaints were filed in the Southern Division of the Eastern District of Michigan (hereinafter "Anderton Cases"). Between May 6, 2019 and July 26, 2019, the Anderton Cases were transferred to the Northern Division of the Eastern District of Michigan as companion cases to *In re Duramax*. *See e.g.*, ECF No. 5 of 19-11306. The complaints in each of the cases allege violations of RICO and a multitude of state law fraud claims against GM and Bosch regarding fuel emissions for the GM Silverado and Sierra diesel trucks. *See e.g.*, ECF No. 1 at

PageID.213-247 of 19-11306. The Anderton Cases involve over 2700 plaintiffs from 48 states (all states except California and Hawaii). The Anderton Cases were consolidated with *In re Duramax Diesel Litigation* in January 2020.[2] ECF Nos. 144, 145.

## II.

Just as a review of the factual background in *Duramax* is instructive, so too is a brief review of the rules regarding joinder of parties and claims and the rules governing consolidation of cases.

## A.

Federal Rule of Civil Procedure 19, Required Joinder of Parties, explains which parties are required to be joined in a case.

> (a) Persons Required to Be Joined if Feasible.
>     (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>         (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>         (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>             (i) as a practical matter impair or impede the person's ability to protect the interest; or
>             (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Sixth Circuit has explained that,

> We use a three-part test to determine whether a party is indispensable under Rule 19. "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy,* 373 F.3d at 666. "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id.* "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." *Id.* (citation and internal quotation marks omitted). Thus, a person or entity "is only indispensable,

---

[2] Plaintiffs originally requested to delay Anderton Plaintiffs discovery until conclusion of In re Duramax case because "[i]f certain Plaintiffs accept a class action settlement [if one is offered in *Duramax*], then there is no need for Defendants to waste time and money conducting discovery on those Plaintiffs." ECF No. 20 at PageID.296.

> within the meaning of Rule 19, if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee." *Id.* (citing 4 Moore's Fed. Practice § 19.02[3][c], at 19–22).
>
> A party is necessary under Rule 19 if either (1) in the party's absence, the court cannot accord complete relief among existing parties, Fed.R.Civ.P. 19(a)(1)(A), or (2) if the party claims an interest relating to the subject of the action and disposing of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations because of the interest, Fed.R.Civ.P. 19(a)(1)(B).
>
> *Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 43–44 (6th Cir. 2012)

"An absent party must be joined if 'in that person's absence, the court cannot accord complete relief among existing parties.'" *Kindle v. City of Jeffersontown, Ky.*, 374 F. App'x 562, 570 (6th Cir. 2010) (quoting Fed. R. Civ. Proc. 19(a)(1)(A)). "Completeness [for the basis of a FRCP 19 decision] is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) (quoting *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996)). Additionally, "the court may consider evidence outside the pleadings" when considering joinder under Rule 19. *Hensley v. Conner*, 800 F. App'x 309, 312 (6th Cir. 2020).

The Sixth Circuit has explained that FRCP 19 "contemplates pre-existing federal court jurisdiction . . . . at the time of removal." *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 958 (6th Cir. 2017). Therefore, "[a]n act of joinder under Rule 19 would itself be an exercise of federal court jurisdiction. In the absence of jurisdiction over the existing lawsuit, a district court has no power to join another party to the proceeding." *Id.* Finally, "joint tortfeasors are not required parties under Rule 19(a)." *Wilson v. Gordon*, 822 F.3d 934, 957 (6th Cir. 2016) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990)).

**B.**

Federal Rule of Civil Procedure 20 governs which persons may be joined. "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FRCP 20(a)(1). As for Defendants, persons may be joined into one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FRCP 20(a)(2). "Joinder is encouraged because it avoids multiple lawsuits involving similar or identical issues." *Pasha v. Jones*, 1996 WL 185786 at *1 (6th Cir. 1996) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332–33 (8th Cir. 1974)). "Defendants may be joined if 'any right to relief is asserted against them jointly, *severally, or in the alternative*,' Fed.R.Civ.P. 20(a)(2), so an allegation of joint liability is not required." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012).

The "transaction-or-occurrence" test of Rule 20(a) "is similar to the transaction-or-occurrence test of Rule 13(a) for compulsory counterclaims, which has been construed as requiring a 'logical relationship' between the claims." *In re EMC Corp.*, 677 F.3d at 1357–58 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The "logical relationship" test, in turn, "is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action . . ." *Id.* Courts have applied the "logical relationship" test when interpreting the "same transaction or occurrence" standard not only under Rule 20(a)(2) for joinder of defendants and Rule 13(a) for compulsory counter claims, but also to joinder of plaintiffs under Rule 20(a)(1). *See, e.g., Mosley*

*v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974) ("rule 20 would permit all reasonable related claims for relief by or against different parties to be tried in a single proceeding").

Doubts are to be resolved in favor of joinder. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). That is, "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.*; *see also LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("The words 'transaction or occurrence' are given a broad and liberal interpretation."). "Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences' — a single transaction is not required." *In re EMC Corp.*, 677 F.3d at 1356.

## C.

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

"District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). If a case "involve[s] some common issues but individual issues predominate, consolidation should be denied." *Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567, 572 (E.D. Mich. 2011). District Courts "may issue an order of consolidation on its own motion, and despite the protestations of the parties." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). The Sixth Circuit has outlined factors for the court to consider before consolidating cases:

> Whether the specific risks of prejudice and possible confusion [of consolidating multiple cases] are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude

multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

## D.

In addition, Eastern District of Michigan Local Rule 83.11(b)(11) provides the process to determine if a case is a companion case.

> (A) Companion cases are cases in which it appears that:
>> (i) substantially similar evidence will be offered at trial, or
>> (ii) the same or related parties are present and the cases arise out of the same transaction or occurrence, or
>> (iii) they are Social Security cases filed by the same claimant.
> (B) Cases may be companion cases even though one of them has been terminated.
> (C) Counsel or a party without counsel must bring companion cases to the court's attention by responding to the questions on the civil case cover sheet or in the electronic filing system.
> (D) When it becomes apparent to the Judge to whom a case is assigned and to a Judge having an earlier case number that two cases are companion cases, upon consent of the Judge having the earlier case number, the Judge shall sign an order reassigning the case to the Judge having the earlier case number.

## E.

Federal Rule of Civil Procedure 23 provides a mechanism for a representative of a class of individuals to sue on behalf of all members of the class. FRCP outlines four requirements,

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> FRCP 23(a); see also *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 617 (6th Cir. 2007).

In addition to meeting the four requirements of 23(a), one of the three provisions in 23(b) must also be satisfied: (1) there must be a risk of inconsistent adjudications between class members if individual actions were filed, (2) the party opposing class certification has "refused to act on

grounds that apply generally to the class," or (3) "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23 (b). If a class is certified under 23(b)(3), a class member may choose to opt-out of the litigation. FRCP 23(c)(2)(B); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615–17 (1997). If appropriate, "a class may be divided into subclasses that are each treated as a class under this rule." *Id.* (c)(5).

The analysis of a plaintiff's compliance with the requirements of Rule 23 is "rigorous." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Rule 23," the Supreme Court instructs, "does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). Moreover, a class can be certified "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Id.* (citations and internal quotation marks omitted) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982)).

The general rule is that the proponent of certification bears the burden of proof. *In Re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though pleadings may be sufficient to meet the burden, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (quoting *General Telepone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

**F.**

The Class Action Fairness Act ("CAFA") changed the jurisdiction requirements for both class actions and mass actions. A class action requires the matter in controversy to exceed $5 million and at least one plaintiff to be a citizen of a different state than at least one defendant. 28 U.S.C. § 1332(d)(2). However, a district "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" if between one third and two thirds of proposed class members are citizens of the state where the action was originally filed. *Id.* (d)(3). The district court must decline jurisdiction if over two thirds of the proposed class are citizens of the state where the action was originally filed, at least one primary defendant is a citizen of the state where the action was originally filed, and no other similar class action has been filed. *Id.* (d)(4). The claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5 million. *Id.* (d)(6).

Mass action, as defined by CAFA, is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).

> For class and mass actions, CAFA expanded diversity jurisdiction in two key ways. First, it replaced the ordinary requirement of complete diversity of citizenship among all plaintiffs and defendants, see *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–531, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), with a requirement of minimal diversity. Under that requirement, a federal court may exercise jurisdiction over a class action if "any member of a class of plaintiffs is a citizen of a State different from any defendant." § 1332(d)(2)(A). The same rule applies to mass actions. See § 1332(d)(11)(A) ("[A] mass action shall be deemed ... removable under [§§ 1332(d)(2) through (d)(10) ]"). Second, whereas § 1332(a) ordinarily requires each plaintiff's claim to exceed the sum or value of $75,000, see *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 554–555, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005), CAFA grants federal jurisdiction over class and mass actions in which the aggregate amount in controversy exceeds $5 million. §§ 1332(d)(2), (d)(6), (d)(11)(A). Class and mass actions filed in state court that satisfy CAFA's requirements may be removed to federal court, 28 U.S.C. § 1453, but federal jurisdiction in a mass action, unlike a class action, "shall exist only over

those plaintiffs" whose claims individually satisfy the $75,000 amount in controversy requirement, § 1332(d)(11)(B)(i).
*Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165–66 (2014)

"CAFA was not to be read narrowly, but as a broad grant of jurisdiction in interstate class actions."

*Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017); S. Rep. No. 109-14 at 43 (2005) ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."). This broad reading of the statute should also be applied to the mass action part of CAFA.  S. Rep. No. 109-14 at 43–45 (2005). The Senate Report also provides that the exceptions to mass action jurisdiction (all claims arising out of an event in the state where the suit was filed; defendants joined claims; claims are asserted on behalf of public; claims consolidated solely for pretrial) should "be interpreted strictly by federal courts." *Id.* A mass action that was removed to federal court cannot be transferred to a second federal court, if the mass action is part of an MDL "unless a majority of the plaintiffs in the action request transfer." 28 U.S.C. § 1332(d)(11)(C).

## G.

Before continuing to the discussion of remand in the instant case, it is instructive to examine *In re Duramax* again. *In re Duramax Diesel Litigation* includes two consolidated class actions (Mizell v. GM, 17-11984 and Fenner v. GM, 17-11661) and 26 cases[3] with 2700 plaintiffs asserting individual claims. Defendants in *In re Duramax* are GM, Bosch LLC, and Bosch GmbH. The parties in the two class action cases stipulated to consolidation. Additionally, the parties did not object to consolidating the Anderton cases for discovery. Further, there have been no

---

[3] 19-11306, 19-11307, 19-11308, 19-11313, 19-11320, 19-11331, 19-11332, 19-11337, 19-11339, 19-11341, 19-11344, 19-11348, 19-11349, 19-11351, 19-11354, 19-11357, 19-11365, 19-11366, 19-11368, 19-11370, 19-11372, 19-11374, 19-11376, 19-11379, 19-11381, 19-11394.

objections to the joinder of plaintiffs or defendants. There are no dealership defendants in any of the 28 consolidated cases.

Despite the agreement to consolidate the cases for discovery, the class action plaintiffs objected to this Court's direction to file an amended consolidated complaint for all 28 cases. The class action Plaintiffs argued that "The interest of the Anderton Plaintiffs is not aligned with vigorous prosecution of the claims of the Duramax named Plaintiffs. Anderton Plaintiffs' strategy is to hedge their bets: heads I win, tails you lose, which is antithetical to the Duramax Plaintiffs' full throttle efforts to achieve class certification and to represent the interests of all the class members – not just their own." ECF No. 147 at PageID.5889. Anderton Plaintiffs responded they believed the interests of the Anderton Plaintiffs and Duramax Plaintiffs are aligned in part because the Anderton Plaintiffs are all members of the putative Duramax class. ECF No. 154 at PageID.5959-5960. As it stands, the 26 Anderton cases have been consolidated with *In re Duramax* class action cases for discovery and pretrial purposes. ECF Nos. 144, 156.

### III.

GM contends in their removal notice that there are three reasons supporting the exercise of federal jurisdiction. First, it contends that diversity jurisdiction exists because the dealer defendants are either fraudulently joined or alternatively that this Court may "exercise its discretion to sever the claims against them as dispensable parties under Federal Rule of Civil Procedure 21."[4] ECF No. 1 at PageID.4 in 19-13220. Second, Defendant alleges jurisdiction under 28 U.S.C. § 1332(d) pursuant to CAFA's class action prong. *Id.* Third, Defendant alleges federal question jurisdiction exists under 28 U.S.C. § 1331 "because plaintiffs' claims depend on the resolution of substantial questions of federal law concerning federal emissions regulations and

---

[4] FRCP 21 provides, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

standards and compliance with federal EPA regulations that are necessarily federal in character." *Id.* at PageID.4-5.

In Plaintiffs' motion for remand, they emphasize that generally "removal jurisdiction is strictly construed." ECF No. 4-1 at PageID.341. Plaintiffs argue there is no diversity jurisdiction. They contend the Dealer Defendants were not fraudulently joined because Plaintiffs have a valid claim against the Dealer Defendants. *Id.* at PageID.349-352. Additionally, Plaintiffs argue that Defendant GM "failed to demonstrate that the Dealer Defendants should be dismissed as dispensable parties." *Id.* at PageID.361. Plaintiffs explain they "brought viable claims against the Dealer Defendants. Those claims relate to the same factual allegations made against the remaining defendants. And if those claims are dismissed, Plaintiffs would be forced to pursue them against the Dealer Defendants in state court, thereby leading to parallel, and possibly inconsistent, proceedings." *Id.* Also, Plaintiffs argue that FRCP 19 and 21 are rarely used to dismiss a properly joined defendant from a case in order to achieve diversity jurisdiction. *Id.* at PageID.361-364. Second, Plaintiffs argue there is no CAFA jurisdiction because the case is not a class action and there are insufficient plaintiffs for a mass action CAFA removal. *Id.* at PageID.344-349. Plaintiffs explain the case was not brought under FRCP 23 or a related statute, Plaintiffs have not identified any representative persons, have no class action allegations, have not identified a proposed class, and do not seek a class remedy. *Id.* Plaintiffs also highlight that their complaint expressly states, "Plaintiffs deny that the instant case is a class action and disclaim any intention to prosecute this case as a class action." ECF No. 1-1 at PageID.196. Plaintiffs also argue that the instant case has 85 members and the related *Pantel v. General Motors* complaint[5] has 92 plaintiffs, which is

---

[5] 19-13219. The case was also filed in the Superior Court of the State of California, County of Los Angeles, removed to federal court, and transferred to the Eastern District of Michigan. Plaintiffs in *Pantel v. General Motors* and *Bulaon v. General Motors* are represented by the same attorney.

insufficient for the 100-plaintiff rule for CAFA mass actions. ECF No. at 4-1 PageID.342. Third, Plaintiffs argue that there is no federal question jurisdiction because non-compliance with EPA regulations does not create federal question jurisdiction. ECF No. 4-1 at PageID.342-343.

GM responds that it "will not proceed on fraudulent joinder as a basis for federal jurisdiction," but asserts severing Dealer Defendants claims "provides a legally sound and fundamentally fair alternative option for the Court to retain jurisdiction and deny remand." ECF No. 14 at PageID.408. GM also reiterated its previous arguments that there is federal jurisdiction under CAFA under the class action prong[6] and that Plaintiffs' artful pleading does not prevent federal question jurisdiction.

## IV.

In order for federal jurisdiction to exist, there must be diversity jurisdiction, federal question jurisdiction, or supplemental jurisdiction. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– [] citizens of different States . . ."); 28 U.S.C. § 1367 (" . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or

---

[6] GM does not address the possibility of a mass action CAFA claim.

the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "Upon removal of an action . . . , the district court shall sever from the action all claims [that are 'not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute'] and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441 (c).

## A.

The Class Action Fairness Act ("CAFA") states for class actions:

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
    (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
    (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
    (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.
28 U.S.C. § 1332(d)(2).

In addition to addressing class actions, CAFA also provides for federal court jurisdiction of mass actions. A mass action is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). Mass actions also require a matter in controversy over $5,000,000 and minimal diversity. *Id.* at § 1332(d)(11)(A). Additionally, "federal jurisdiction in a mass action, unlike a class action, shall exist only over those plaintiffs whose claims individually satisfy the $75,000 amount in controversy requirement." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165–66 (2014). The essential element to a determination of a mass action hinges on whether a consolidated trial of 100+ claimants has been proposed. Consolidation of cases only through the pretrial phase is insufficient to justify mass action consolidation. "Although plaintiffs concede that their respective individual

claims involve common questions of law or fact, state court plaintiffs with common claims against a common defendant may bring separate cases with fewer than 100 plaintiffs each to avoid federal jurisdiction under CAFA—unless their claims are proposed to be tried jointly." *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162–63 (8th Cir. 2013) (internal citations omitted) (citing cases from the 3rd, 9th, and 11th circuits); *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218, 1223–24 (9th Cir. 2014). The Eighth Circuit further specified that "Here, plaintiffs' assignment motions attempted to limit their request to coordination of pretrial proceedings, which would keep the cases outside the definition of a mass action. Only when plaintiffs' attorneys made clear the extent of consolidation being sought at the state court motions hearing did [defendants] have a basis for removal." *Atwell*, 740 F.3d at 1162 (8th Cir. 2013) (citation omitted).

> A proposal to hold multiple trials in a single suit (say, 72 plaintiffs at a time, or just one trial with 10 plaintiffs and the use of preclusion to cover everyone else) does not take the suit outside § 1332(d)(11). Recall the language of § 1332(d)(11)(B)(i): any "civil action . . . in which monetary relief *claims* of 100 or more persons are proposed to be tried jointly" is treated as a "class action" (emphasis added). The question is not whether 100 or more plaintiffs answer a roll call in court, but whether the "claims" advanced by 100 or more persons are proposed to be tried jointly. A trial of 10 exemplary plaintiffs, followed by application of issue or claim preclusion to 134 more plaintiffs without another trial, is one in which the claims of 100 or more persons are being tried jointly, and § 1332(d) thus brings the suit within federal jurisdiction.
> *Bullard v. Burlington Northern Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008).

Additionally, any implicit language in a motion or request to the court seeking a joint trial has been deemed sufficient for consolidation and mass action removal, even if not all claims individually go to trial and instead a bellwether process is held. *In re Abbott Laboratories, Inc.*, 698 F.3d 568, 572–73 (7th Cir. 2012).

The Sixth Circuit found in *Freeman v. Blue Ridge Paper Products, Inc.*, that plaintiffs cannot avoid CAFA jurisdiction by artfully drafting their complaint around the amount in controversy.

> The $5 million CAFA threshold appears to be met in this case because the $4.9 million sought in each of the five suits must be aggregated. The complaints are identical in all respects except for the artificially broken up time periods. Plaintiffs put forth no colorable reason for breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction. In fact, plaintiffs' counsel admitted at oral argument that avoiding CAFA was the only reason for this structuring. If such pure structuring permits class plaintiffs to avoid CAFA, then Congress's obvious purpose in passing the statute—to allow defendants to defend large interstate class actions in federal court—can be avoided almost at will, as long as state law permits suits to be broken up on some basis.
>
> *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 407 (6th Cir. 2008)

Further, the Sixth Circuit has held in a case discussing the local controversy exception to CAFA that "CAFA was not to be read narrowly, but as a broad grant of jurisdiction in interstate class actions." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017). Even though there is usually a presumption to resolve doubts regarding removal in favor of remand, (*Tax Increment Financing Authority v. Liberty Mutual Insurance Co.*, 771 F. Supp. 2d 791, 793 (E.D. Mich. 2011)), "[t]here is no presumption against removal of cases under CAFA." *Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 744 (E.D. Mich. 2017).

In the instant case, Plaintiffs' complaint does not expressly seek class action relief though their joinder must satisfy FRCP 19(a) or FRCP 20(a)(1). The complaint suggests the claims are individual to each of the 85 plaintiffs. No class representative is identified. In addition, the 26 Anderton Cases, are also structured as individual complaints. In fact, the Anderton Cases Plaintiffs admitted that they might accept a potential class action settlement that results from the *In re Duramax* class action and dismiss their individual claims. *See* ECF No. 25 at PageID.709 in 19-11306. CAFA's class action prong does not provide federal jurisdiction when plaintiffs solely seek individual relief, even if the complaint copies a significant amount of language from a related putative class action lawsuit.

Additionally, CAFA does not provide federal jurisdiction as a result of a mass action. Even though the Sixth Circuit has not directly addressed the requirements for federal jurisdiction in a mass action, multiple sister circuits have concluded that at least 100 plaintiffs are required for a mass action to exist. In the instant case, there are only 85 plaintiffs. While there is an identical suit filed by Plaintiffs' counsel with an additional 92 plaintiffs with the same defendants (with the exception of two different Dealer Defendants), Plaintiffs have not (as of yet) expressed their intention to try the two sets of cases together. If at a later date Plaintiffs express their desire to consolidate the two cases for trial, including bellwether trials, that would have an impact upon both cases and there would be a sufficient predicate for the exercise of federal jurisdiction for a mass action. However, Plaintiffs are the master of their own complaint and without further indication, there is insufficient information to support the exercise of federal jurisdiction. The Sixth Circuit's guidance in *Freeman* does not rescue the complaint and provide federal jurisdiction. In *Freeman*, the only deficiency was the amount of damages, which was claimed at $4.9 million, just under the $5 million ceiling because the plaintiffs (300 landowners downriver from Defendant's papermill) had filed separate complaints for each year they were seeking damages. In the instant case and its companion *Pantel v. GM*, two different sets of plaintiffs have alleged (albeit the same) individual claims against (the same) defendants.[7] While CAFA should be read broadly, it cannot be read broadly enough to force Plaintiffs into the same case, without any indication on their own of their desire to consolidate with a different complaint. There is no federal jurisdiction under CAFA mass actions at this point in time.

---

[7] The plaintiffs in *Pantel v. GM* and *Bulaon v. GM* assert claims against two Dealer Defendants. The Dealer Defendants in Pantel are Rally Auto Group, Inc. and Merle Stone Chevrolet and the Dealer Defendants in Bulaon are Courtesy Chevrolet Center and Paradise Chevrolet.

**B.**

Defendant GM argues that just because Plaintiffs have artfully pled around federal question jurisdiction, does not mean there is no basis for the exercise of federal question jurisdiction. Specifically, GM contends "[a]lthough plaintiffs purport to allege only state law claims, the gravamen of the claims is necessarily federal in character, and plaintiffs' proof of their claims will involve the resolution of substantial, disputed questions of federal law, including whether the emissions from GM vehicles exceed federal standards." ECF No. 14 at PageID.422. Plaintiffs' counsel did file 26 cases with almost identical language in the Eastern District of Michigan with plaintiffs from 48 states and those cases included a RICO claim. *See* ECF No. 144 in 17-11661. However, Plaintiffs in the instant case chose not to allege a RICO claim against Defendants. Simply because EPA standards are cited and will be referenced, that does not create a federal question cause of action in Plaintiffs' complaint. In fact, Defendant GM does not identify what specific federal question Plaintiffs' are alleging. The closest GM gets is a footnote where it provides "But plaintiffs' putative state-law claims predicated on federal standards and EPA regulations and alleged violations of federal laws arise under federal law and are manifestly federal in character." ECF No. 14 at PageID.423 n.22. In addition, this Court rejected a similar argument from GM in *In re Duramax* when it held that the state law fraud claims were not preempted by the EPA standards. *See* ECF No. 61 in 17-11661. There is no federal question jurisdiction in the underlying complaint.

**C.**

In its response to Plaintiffs' motion for remand, GM provides it will not continue to argue Dealer Defendants were fraudulently joined. Accordingly, the argument will not be addressed.

However, GM still does argue that this Court has the authority to sever the Dealer Defendants claims.

Federal Rule of Civil Procedures 20(a)(2) provides that

Persons . . . may be joined in one action as defendants if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

FRCP 21 also provides that "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Neman-Green, Inc. v. Alfonzo-Larrian*, 490 U.S. 826, 832 (1989); *Soberay Mach. & Equipment Co. v. MPF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999) ("[I]t is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity.").

The Sixth Circuit has explained,

Federal Rule of Civil Procedure 20 provides that defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Under Rule 18(a), a party asserting a claim may join "as many claims as it has against an opposing party." Rule 21 allows the district court, in the event of misjoinder or nonjoinder, to "add or drop a party" or "sever any claim against a party." In determining whether to sever claims, courts consider the following factors:

(1) whether the claims arise out of the same transaction or occurrence;
(2) whether the claims present some common questions of law or fact;
(3) whether settlement of the claims or judicial economy would be facilitated;
(4) whether prejudice would be avoided if severance were granted; and
(5) whether different witnesses and documentary proof are required for separate claims.

*Mann v. Mohr*, 2020 WL 398532 at *3 (6th Cir. 2020) (quoting in part *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018)).

"Rule 21 of the Federal Rules of Civil Procedure permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19, that is, the party to be dropped must not be a necessary party." *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545–46 (6th Cir. 1994) (footnotes omitted). First, the Court must determine if the party is indispensable. Two criteria determine if a party is indispensable. The first criteria asks if "A party is needed for just adjudication under Rule 19 if: (1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Id.* at 546 (internal quotation and citation omitted). If a party is determined to be necessary, then "the court must then determine whether or not the party is indispensable by considering whether: (1) a judgment rendered in the party's absence would prejudice the available party; (2) such prejudice could be lessened or avoided; (3) a judgment rendered in the party's absence would be adequate; and (4) the plaintiff has an adequate remedy if the action is dismissed for non-joinder.." *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 682 (S.D. Ohio 2014) (citing *Soberay Mach. & Equip. Co.*, 181 F.3d at 764).

If a party is determined under Rule 19 to be a dispensable party, there are five factors to consider when determining to sever claims against nondiverse dispensable defendants.

> (1) whether claims arise out of the same transaction or occurrence; (2) whether claims present some common question of law or fact; (3) whether settlement of claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.
> *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d at 682 (citations omitted).

Before deciding the question of whether the claims against the Dealer Defendants can be severed from the remainder of the complaint, the Dealer Defendants' perspective should be

consulted. However, the only reference to the Dealer Defendants is contained in GM's notice of removal on the Central District of California docket providing that "All defendants who have been properly served have consented to the removal of this action pursuant to 28 U.S.C. § 1446(b)(2)(A). ECF No. 1 at PageID.27 in 19-07350 (C.D. Cal.). There is evidence that the notice of removal was served on Plaintiffs' counsel, but no evidence of service on co-defendants counsel. ECF No. 6 in 19-07343. The state court docket that is included with the California case and this case include proofs of service of the original complaint against the Dealer Defendants in the related case *Pantel v. GM*, Rally Auto Group, Inc. and Merle Stone Chevrolet. ECF No. 1-1 at PageID.241-247 in 19-13220; ECF No. 1-1 at PageID.241-247 in 19-07343 from C.D. Cal. However, the Court cannot find locate any proof of service of the original complaint against the Dealer Defendants, Paradise Chevrolet and Courtesy Chevrolet Center, in the record. Additionally, no attorneys have filed notices of appearance on behalf of the Dealer Defendants on the C.D. Cal. Case docket or the instant case and each of the motions only reflect proof of service via CM/ECF, which is insufficient service on an unrepresented party. This Court is not confident that Dealer Defendants know the case was removed from Superior Court of the State of California to the Central District of California and then transferred to the Eastern District of Michigan. Additionally, the Court is concerned that Dealer Defendants may not have been properly served with the original complaint. Therefore, this Court will direct supplemental briefing from both Plaintiffs and Defendants.

## V.

Accordingly, it is **ORDERED** that Plaintiffs must provide proof of service of the original state court complaint against Dealer Defendants. Additionally, Plaintiffs must explain, if Dealer Defendants have been properly served but have not answered, why they have failed to prosecute

their claims to a default judgment. Alternatively, Plaintiffs must explain why the Dealer Defendants have not been served with process. Plaintiffs' supplemental briefing is due on or before **July 31, 2020** and may be no longer than 10 pages.

It is further **ORDERED** that Defendant GM is **DIRECTED** to provide notice of its co-Defendants' agreement to the notice of removal from the Superior Court of the State of California to the Central District of California. Defendant GM must also explain and provide documentation to substantiate whether Dealer Defendants were served with the notice of removal and the transfer to the Eastern District of Michigan. Defendant GM's supplemental brief is due on or before **July 31, 2020** and may be no longer than 10 pages.

Dated: July 9, 2020                                        s/Thomas L. Ludington
                                                                        THOMAS L. LUDINGTON
                                                                        United States District Judge